# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 13-591V
(not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
GREG PALATTAO and ANGELA          *
PALATTAO, as Parents and Natural  *
Guardians of minor, R.P.,         *
                                  *
                Petitioners,      *          Filed: September Sept. 20, 2019
                                  *
        v.                        *
                                  *          Attorney's Fees and Costs.
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *
                                  *
                Respondent.       *
                                  *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Kate Gerayne Westad*, Larkin Hoffman, et al., Ltd., Minneapolis, MN, for Petitioners.

*Mollie D. Gorney*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING IN PART FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On August 20, 2013, Greg and Angela Palattao filed a petition on behalf of their minor child, R.P., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] In it, Petitioners alleged that R.P. suffered from transverse myelitis as a

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). This means that the Decision will be available to anyone with access to the internet. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

result of receiving his third round of childhood vaccinations (including diphtheria-tetanus-acellular pertussis, haemophilus influenza B, inactivate polio virus, pneumococcal conjugate, and his first dose of the influenza vaccine) on January 7, 2013. Petition ("Pet.") (ECF No. 1). An entitlement hearing was held, followed by a half-day rebuttal hearing, and the parties submitted post-hearing briefs. On February 4, 2019, I issued a Decision denying entitlement and dismissing the Petition. Decision (ECF No. 92). That Decision was not appealed.

Before me now is Petitioners' sole, final application for attorney's fees and costs. (ECF No. 96) ("Fees App."). Petitioners request a total of $256,387.59 in compensation for the work of their counsel, Ms. Kate G. Westad, other attorneys no longer appearing in this matter, paralegals, and costs. Fees App. at 2. Pursuant to General Order No. 9, Petitioners also indicate that they have not incurred any personal costs in furtherance of this litigation. *Id.* Further, Petitioners' counsel has changed law firms twice during this proceeding. *Id.* Because of this, Petitioners ask this court to split the awarded costs and fees between the firms as follows:[3]

|  | Lommen Abdo, P.A. | Larkin Hoffman Law Firm | SiebenCarey, P.A. |
|---|---|---|---|
| **Costs** | $11,512.50 | $56,112.59 | $0 |
| **Fees** | $41,563.00 | $144,642.00 | $2,557.50 |
| **Total** | **$53,075.50** | **$200,754.59** | **$2,557.50** |

*See id.* at 1.

Respondent reacted to the motion on September 9, 2019, deferring to my discretion as to whether Petitioner has met the legal standards for a final award of fees and costs. *See* (ECF No. 98) ("Fees App. Resp.") at 3. Respondent is otherwise satisfied that the statutory requirements for an award of attorney's fees and costs are met and asks that I determine a reasonable award. *Id.* at 2–3.

For the reasons stated below, I hereby **GRANT IN PART** Petitioner's Motion, awarding attorney's fees and costs in the total amount of **$247,949.59**.

---

[3] The three law firms were involved in this case during the following periods:
    (1) Lommen Abdo, P.A.:        05/07/2013–03/30/2016
    (2) Larkin Hoffman Law Firm:    05/20/2016–03/28/2019
    (3) SiebenCarey, P.A.:        05/14/2019–08/30/2019

The following attorneys were involved in this case during the following periods:
    (1) Kate Westad          05/13/2014–present
    (2) Sheila Bjorklund      05/07/2013–04/10/2014

# ANALYSIS

## I.     A Final Award of Fees and Costs is Appropriate

I have in prior decisions set forth at length the criteria to be applied when determining if fees should be awarded for an unsuccessful claim. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4–5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5–6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis[4] through some objective evidentiary showing and in light of the "totality of the circumstances." The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

Although Petitioners were not successful in pursuing their claim, I find that the matter had sufficient reasonable basis to justify a final award of fees. I do not doubt that Mr. and Mrs. Palattao brought their claim in a good-faith belief that vaccinations played a causal role in R.P.'s injuries. In addition, I find that the claim possessed more than sufficient objective support to meet the second half of the reasonable basis test, and Respondent has not otherwise offered any argument that the claim lacked reasonable basis. Accordingly, an award of attorney's fees and costs is proper.

## II.    Calculating Amount of Final Award

I must now evaluate what amount of award is proper. In any Vaccine Program case in which fees are sought, the requested sum must be "reasonable." Section 15(e)(1). Special masters may in their discretion reduce attorney hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208–09 (2009); *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) (explaining that special masters have "wide discretion in determining the reasonableness" of attorney's fees and costs).

---

[4]Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one—and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

## A. Reasonable Attorney's Fees

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended[5] on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

### 1. Reasonable Hourly Rates

Petitioners asks that I compensate Ms. Kate Westad and Ms. Sheila Bjorklund at rates varying from $275 per hour for work to $350 per hour for work. *See* Fees App. Petitioners also ask that I compensate professionals from the three law firms at varying rates. *See id.* The requested hourly rates are broken down as follows:

|  | **2013** | **2014** | **2015** | **2016** | **2017** | **2018** | **2019** |
|---|---|---|---|---|---|---|---|
| **Kate Westad** | $275 | $275 $350 | $275 $350 | $350 | $350 | $350 | $350 |
| **Sheila Bjorklund** | $315 | $315 | -- | -- | -- | -- | -- |
| **Paralegals** | $125 | $125 | $125 | $125 | $125 | $125 | $125 |
| **Technical Paralegals** | -- | -- | -- | $165 | $165 | $165 | $165 |

---

[5] An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008); *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, D.C., for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended is considered. *Sabella*, 86 Fed. Cl. at 205–06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 434–37 (1983).

In some cases, determining the proper hourly rate for an attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate used for the lodestar calculation. *Avera*, 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). This "Davis" exception is inapplicable here, however, because I have previously found the attorneys in the same area should receive forum rates. *See Miron v. Sec'y of Health & Human Servs.*, No. 16-762V, 2017 WL 5386607 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (awarding similar attorney fees and involving one of the same law firms in this case).

Petitioners' counsel has not previously appeared before me. But other special masters have found their rates reasonable. *See, e.g.*, *Rus v. Sec'y of Health & Human Servs.*, No. 12-631V, 2017 WL 7053993 (Fed. Cl. Spec. Mstr. Dec. 22, 2017) (special master Gowen) (finding rates of Ms. Westad, Ms. Bjorklund, and other paralegals reasonable); *Marsyla v. Sec'y of Health & Human Servs.*, No. 15–1172V, 2016 WL 8253021 (Fed. Cl. Spec. Mstr. Oct. 25, 2016) (special master Dorsey) (finding rates of Ms. Westad and other paralegals reasonable); *Larson v. Sec'y of Health & Human Servs.*, No. 15–1077V, 2016 WL 5799218 (Fed. Cl. Spec. Mstr. Jul. 15, 2016) (special master Dorsey) (finding rates of Ms. Westad and other paralegals reasonable).[6] I shall do the same—with two exceptions.[7]

The first exception relates to two hours of work performed by Ms. Westad on April 23, 2014. Ms. Westad billed at a rate of $350 per hour for two hours of work performed on April 23. *See* (ECF No. 96-1) ("Fees App. Ex. A") at 7. But she billed at a rate of $275 per hour for work performed both before and after April 23. *See id.* at 7–9. No explanation is given for this discrepancy. Accordingly, I will reduce Ms. Westad's rate for work performed on April 23, 2014 from $350 per hour to $275. This results in a reduction of **$150.00** attributable to bills from Lommen Abdo P.A.

The second exception relates to the rate at which travel time was billed. Petitioners' counsel specifically billed 20.50 hours for traveling at the full hourly rate. The Vaccine Program, however, routinely compensates at half a normal rate for time spent traveling. *See Rus*, 2017 WL 7053993, at *5. This is not the first time that Petitioners' counsel has billed at a full hourly rate while traveling. *See id.* Because other special masters have reduced hourly rates while traveling, I will do the same. Accordingly, I reduce counsel's rate by half for the time she spent traveling, resulting in a reduction of **$3,587.50** attributable to bills from the Larkin Hoffman Law Firm.

## 2.  Reasonable Hours Expended

Reasonable hours are not excessive, redundant, or otherwise unnecessary. *See Shorkey v. Sec'y of Health & Human Servs.*, No. 15–768V, 2017 WL 2119118 (Fed. Cl. Spec. Mstr. April 21,

---

[6] In addition, the rates requested for attorneys of comparable skills and experience levels are consistent with the Office of Special Masters' Rate Schedule. *See OSM Attorney's Forum Hourly Rate Fee Schedules* found at https://www.uscfc.uscourts.gov/node/2914.

[7] Although I have granted Petitioner's counsel's rates, I remind her, as my colleagues have previously, that the Vaccine Guidelines direct attorneys to include with fees motions an affidavit that includes the appropriate information about the relevant attorney's expertise. *See Guidelines for Practice Under the National Vaccine Injury Compensation Program* ("*Guidelines for Practice*") at 70–71 (revised August 22, 2019) found at https://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES%20FOR%20PRACTICE%20-%208.22.2019.pdf (Section X, Chapter 3, Part B(1)(a)).

2017); *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008).

The overall hours spent on this matter (659.70) appear to be reasonable. Despite the length of time this case was pending (2013–2019) this is the first application for attorney's fees. Additionally, Petitioners proffered two expert witnesses, a total of four expert reports, and two and a half days for the entitlement hearing and follow-up. Thus, although the number of hours billed is large, I find it to be a reasonable amount overall. I have reviewed the submitted documentation and do not find any entries to be objectionable, and Respondent also has not objected to any particular entry. Accordingly, based on the rates previously determined, I will award Petitioner a total of $**185,025.00** attorney and paralegal fees.[8]

## B. Reasonable Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (Fed. Cl. 2002). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioners hired two experts in this matter, Dr. Marcel Kinsbourne and Dr. Ralph Shapiro. Petitioners request that Dr. Kinsbourne be paid $500.00 per hour for his time spent conducting research, preparing expert reports, and testifying at the entitlement hearing. Likewise, Petitioners request that Dr. Shapiro be paid at a rate of $550–650 per hour for conducting similar tasks.

### 1. Dr. Kinsbourne's Fees

Dr. Kinsboure has testified in this program many times. (ECF No. 84) ("Hr'g Tr.") at 125:11–13. Although Dr. Kinsbourne requests $500 per hour for work performed on this matter, I have in other instances awarded him a lesser sum of $400 per hour. *See, e.g.*, *L.M. v. Sec'y of*

---

[8] $188,762.50 requested attorney's fees and paralegal costs, minus the $3737.50 discussed above, resulting in $185,025.00.

*Health & Human Servs.*, No. 14-714, 2017 WL 5382907, at \*4 (Fed. Cl. Spec. Mstr. Sept. 29, 2017) (following rate set by other special masters) (citing *Faoro v. Sec'y of Health & Human Servs.*, No. 10-704V, 2014 WL 5654330, at \*3 (Fed. Cl. Spec. Mstr. Oct. 15, 2014)). Dr. Kinsbourne has, however, been awarded $500 hourly rates in other cases. *See, e.g., Simon v. Sec'y of Health & Human Servs.,* No. 05–941V, 2008 WL 623833, at \*6 (Fed. Cl. Spec. Mstr. Feb. 21, 2008); *Adams v. Sec'y of Health & Human Servs.,* No. 01–267V, 2008 WL 2221852, at \*2 (Fed. Cl. Spec. Mstr. Apr. 30, 2008). Dr. Kinsbourne has usually been awarded higher rates when the case concerns one of his specific areas of expertise—namely, encephalopathy and seizures. *See Faoro*, 2014 WL 5654330, at \*4 (explaining that the record must reflect "'specialized knowledge and experience' [that] justifies" the requested hourly rate).

Here, the record reflects that Dr. Kinsbourne's higher requested hourly rate is justified because of his specialized knowledge and experience in the Program. Dr. Kinsbourne has significant experience testifying in cases of this type. Hr'g Tr. at 63:1–65:21. Further, the number of hours that he spent on this case (62.95 since December 2013), compared with the amount of expert reports he filed (three), and the length of this litigation, shows that Dr. Kinsbourne was mostly efficient with his time. *Compare Faoro*, 2014 WL 5654330, at \*3–4 (billing over 60 hours over the course of four years was not reasonable), *with Simon*, 2008 WL 623833, at \*6 (billing 31.75 hours over the course of three years was reasonable). Accordingly, I find Dr. Kinsbourne's rate of $500.00—while not reasonable in *all* cases—reasonable in *this* one.

### 2. Dr. Shapiro's Fees

I have not previously considered the proper hourly rate for Dr. Shapiro. When considering if an expert's hourly rate is reasonable, his professional qualifications and experience in the Program are to be considered. *See Anderson v. Sec'y of Health & Human Servs.*, No. 02-1314V, 2017 WL 2927044, at \*3 (Fed. Cl. Spec. Mstr. May 24, 2017).

There is no doubt that Dr. Shapiro has significant professional and educational qualifications. *See* Hr'g Tr. at 119:11–125:15. Further, Dr. Shapiro's testimony and report greatly aided my resolution of this matter. Yet, despite his education and expertise, the rates Dr. Shapiro requested are excessive.

Lowering Dr. Shapiro's hourly rate is supported by my recent decisions. Typically, I have reserved hourly rates of $500 or more for only the most qualified experts with significant experience testifying in the Program. *See, e.g.*, *Anderson*, 2017 WL 2927044, at \*3 (lowering hourly rate from $500 to $400 when expert did not have significant experience in program); *Lozano*, 2017 WL 6942528, at \*3 (stating that $500 per hour is "at the high end of the rate range paid to experts."). But, Dr. Shapiro does not have significant experience testifying in the Program. Hr'g Tr. at 125:11–13. Recently, in a similar situation, I found a $600 hourly rate too high for "an expert who does not significant experience with the program." *Schultz v. Sec'y of Health & Human*

7

*Servs.*, No. 02-1314V, 2018 WL 1835104, at *3–4 (Fed. Cl. Spec. Mstr. May 24, 2017) (noting that "no other expert in the Program has been awarded such a rate").[9]

Additionally, Dr. Shapiro's hourly rate for his time has varied sharply. In 2017, he sent Ms. Westad a bill requesting $425 per hour for time spent on the case outside of hearings. Fees App. Ex. D at 4. In 2019, by contrast, he sent Ms. Westad a bill requesting $550 per hour for time he spent on the case outside of the hearing, and $650 per hour for time he spent on the case during the hearing. *Id.* at 27. The later bill is a cumulative bill that encompasses the hour entries in the earlier bill. *Compare id.* at 4, *with id.* at 27. No explanation is given for this sharp increase.

Consequently, I will reduce Dr. Shapiro's hourly rate from $550 to $650 per hour to $450 per hour for all work he performed in this action. This is higher than his earlier requested rate, but fairly reflects how this court has treated similarly situated experts. This results in a total deduction of **$4,700.00**.

### 3. <u>Other Costs</u>

Concerning non-expert costs, Petitioner has provided ample documentation of these costs and a quick review does not reveal any of them to be unreasonable. Therefore, the remaining costs, incurred as a result of medical record collection and travel, will be awarded in full.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). I award a total of **$247,949.09** (representing $185,025.00 in attorney's fees and $62,925.59 in costs). Recognizing that fees and costs were split between three different law firms,

---

[9] The Office of Special Masters is in the process of evaluating whether prevailing rate "ceilings" for the highest-paid experts should not be raised, to take into account what certain experts—even those who are inexperienced in Program matters—might command in the market, to ensure that what is received for Vaccine Act work is commensurate. *See Nwala v. Sec'y of Health & Human Servs.*, No. 16-923V, 2019 WL 2005751, at *3–4 (Fed. Cl. Spec. Mstr. April 12, 2019) (discussing the need to pay greater amounts than traditional in the Vaccine Program). Although I independently am determining for present purposes that the work Dr. Shapiro performed on this matter (in 2018 and then before) should *not* exceed the highest sums paid to that time to experts, I do not foreclose the possibility that Dr. Shapiro would not be entitled to a higher rate for any future work he performs for Vaccine Act claimants.

at which Petitioners' counsel worked during the pendency of this case, and pursuant to Petitioners' request, I divide the fees and costs as follows:[10]

1) A lump sum in the amount of $52,925.00, representing $41,413.00 as reimbursement for attorney's fees, and $11,512.00 as reimbursement for costs, in the form of a check payable to Petitioners and Petitioners' counsel's former law firm, Lommen Abdo, P.A.;

2) A lump sum in the amount of $192,467.09, representing $141,054.50 as reimbursement for attorney's fees, and $51,412.59 as reimbursement for costs, in the form of a check payable to Petitioners and Petitioners' counsel's former law firm, Larkin Hoffman Law Firm; and

3) A lump sum in the amount of $2,557.50, representing $2,557.50 as reimbursement for attorney's fees, and $00.00 as reimbursement for costs, in the form of a check payable to Petitioners and Petitioners' counsel's law firm, SiebenCarey, P.A.

In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this decision.[11]


**IT IS SO ORDERED.**


/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[10] Final fees and deductions calculated as follows:

| | Fees Requested | Deductions From Fees | Fees Awarded | Costs Requested | Deductions From Costs | Costs Awarded | Total Amount Awarded (Fees + Costs) |
|---|---|---|---|---|---|---|---|
| Lommen Abdo, P.A. | $ 41,563.00 | $ 150.00 | $ 41,413.00 | $ 11,512.50 | $ - | $ 11,512.00 | $ 52,925.00 |
| Larkin Hoffman Law Firm | $ 144,642.00 | $ 3,587.50 | $ 141,054.50 | $ 56,112.59 | $ 4,700.00 | $ 51,412.59 | $ 192,467.09 |
| SiebenCarey, P.A. | $ 2,557.50 | $ - | $ 2,557.50 | $ - | $ - | $ - | $ 2,557.50 |
| Total | $ 188,762.50 | $ 3,737.50 | $ 185,025.00 | $ 67,625.09 | $ 4,700.00 | $ 62,924.59 | $ 247,949.59 |

[11] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.